David Foster is here for the Hewitts. Francesca Lugolini is here for the Commissioner, and Mr. Foster, you may begin. Good morning, your honors. May it please the court, David Foster for Appellants David and Tammy Hewitt. We're here today because the of deductions promised by Congress as a way to incentivize conservation. This court should find Treasury's processes and the resulting proceeds regulation deficient under the APA for three reasons. First, when it came time to issue regulations to implement Congress's statute, Treasury expressly declared itself exempt from the APA. In Treasury's own words, quoting from the upper right of JA page 175, the Internal Revenue Service concluded when the notice was issued that the notice and comment procedure requirements of 5 USC 553 did not apply to its regulatory project. As a general matter, when somebody says the rules don't apply to me, they're not making that statement as a prelude to strict compliance, but instead to excuse noncompliance. Second, the tax court majority in the Oakbrook case and the Commissioner concede that at least 13 commenters specifically discussed Treasury's proposed regulation concerning how proceeds should be allocated following an extinguishment. The tax court and the DOJ also acknowledged that Treasury didn't mention any of those comments or objections in the preamble to the final regulation, which is completely silent as to the proceeds regulation. As discussed in both our brief and in Judge Holmes's dissent in Oakbrook, many of the commenters said the language was unclear. Some suggested alternatives to the regulation as proposed, and several stated that the proposed requirement would discourage conservation contrary to Congress's intent. In failing to even acknowledge those comments in the preamble, Treasury failed to meet the standard for APA compliance in this circuit, which explained in the Lloyd Nolan case that the basis and purpose statements must enable the reviewing court to see the objections and why the agency reacted them as they did. One commenter requested precisely the change that's at issue here. The New York Landmarks Conservancy, at Joint Appendix page 201, took issue with the regulation's failure to address proceeds attributable to post-donation improvements, and even provided a mathematical example to demonstrate how that failure would lead to unreasonable results. The comment wasn't acknowledged, and Treasury never explained why it didn't adopt the comment. As a result, the land trust community adopted a widely accepted interpretation of the regulation that excluded post-donation improvements from proceeds, consistent with the fact that the land trust didn't have any interest in those improvements. Had Treasury even acknowledged the comment, not responded to it, just acknowledged it, we wouldn't be here, because a clear rejection of the concern would have precluded the widespread misunderstanding that resulted regarding what the regulation required. Third, Treasury offered no reason for imposing an unjust requirement with respect to post-donation improvements. Here, the post-donation improvements that were contemplated by the deed were homes not built by Mr. Hewitt, but by the children he wanted to continue to enjoy the conserved property that he was putting aside. Without any explanation, and despite being aware of this issue specifically, Treasury issued a regulation that the IRS now says required Mr. Hewitt to agree, at the time he made the donation, that if his children built their homes on the protected land, and someday there was a taking, the children would be required to give up the vast majority of the compensation for their homes to the land trust, leaving them without sufficient funds to rebuild a new home. There's no justification for that rule, and Treasury didn't offer one. They, in fact, offered no reason for imposing this. They didn't even acknowledge they were aware that it would lead to unjust results, or explain why it was proceeding with that regulation. And this is in stark contrast to all the cases that are cited by the government in their brief, where there was at least some acknowledgement of the comment, and some explanation as to why it wasn't sufficient. The fight in these cases is usually about whether the explanation was sufficient. Here, we have none. In fact, as the tax court dissenting Judge Holmes colorfully put it, the response to the comments was nothing more than the chirping of crickets. None of this would have happened if the Treasury had just engaged in the back and forth with the regulated public that the APA requires. The record here is that Mr. Hewitt and the Atlantic Coast Conservancy were trying, in good faith, to comply with the requirements of Internal Revenue Code Section 170, and because there wasn't the back and forth required by the APA, a misunderstanding ensued. And this is precisely why there's supposed to be that regulation back and forth. With that introduction, I'd like to focus on several of the specific comments. I already talked a little bit about the New York Landmarks Conservancy, and Judge Holmes explained there's no precise definition that applies in all courts as to when a comment is significant. But there's several different versions of that. The New York Landmarks Conservancy told us that this rule was unreasonable and suggested that it be deleted. The Landmarks Preservation Council of Illinois, it's JA 259, said that the issue of how to divvy up proceeds ought to be between the land trust and the donor. Let them work it out. They have opposing interests and are negotiating at arm's length. And the Trust for Public Land said, hey, there are two other tax rules, and they're kind of obscure, the tax benefit rule and the remote future event rule that are in this regulation, and they can address any policy concerns the IRS has. And then the Land Trust Exchange at JA 215, which was marshaling comments from 500 member organizations, made a similar comment. The question here that the government has raised is that these were somehow insignificant comments. What happened here to the Hewitts is precisely within the zone of interest of those comments. They're there. And Lloyd Nolan tells us to ask whether a reviewing court can see the the agency responded as it did. There's nothing here to understand why the agency responded as it did. And the government has offered several post hoc rationalizations for its actions. But that's precisely what the Supreme Court and Encino Motor Cars said is not what reviewing courts are supposed to do, is to accept or make up post hoc rationalizations that the agency didn't offer. On page 24 of its brief, the government cites the definition of a significant comment from the DC Circuit's decision in HBO versus FCC. And under that definition, they asked, would the comment, if adopted, require a change in the agency's rule? There's no doubt that the comments here meet that standard. If the comments were adopted, there'd be a very different rule. And that's the DC Circuit's definition. Under the definition in Hushon v. Madigan from this court, which the government also cites, there's a question of whether the comment casts doubt on the reasonableness of the rule. And the comments here do that as well. They say it's unreasonable to allow people to build homes on a donated property and then require if they're condemned that they give the vast majority of the proceeds from that condemnation to the land trust in advance. That's not reasonable and would put those people in a very precarious position, inconsistent with Congress's desire to encourage conservation. And all we have from the government in response to this is some impermissible post hoc rationalizations. Maybe the government, maybe Treasury was thinking this, maybe Treasury was thinking that, but you're not going to find any of that in the preamble. It's just not. Isn't that what the purpose of the comments and the notice and the rulemaking is for there to be some certainty with regards to how the regulations are going to be used? Absolutely, Your Honor. The Treasury regulations for all of their benefits are not known for being easy for the general public to understand in all circumstances. And the back and forth here is people try to understand these very technical rules. And the court has seen several cases on this exact language because of this confusion. T.O.T. Holdings, which... I want to go to T.O.T. properties for a second. T.O.T., since I was on the panel for that one, the opinion in T.O.T. specifically said we were not addressing the validity of the regulation because that was not an issue. But no 13, Your Honor. Yes. That was not an issue and it wasn't raised and it's not our job to raise arguments for the parties. That's correct, Your Honor. We have squarely raised it here. It's preserved. It's part of the tax court opinion below. And T.O.T. Property Holdings, while dispositive of our argument as to how the regulations language should be interpreted, it does not address and specifically reserves in footnote 13 on the validity issue. And also the circuit did address it as T.B.D.M. versus the commissioner and found that the regulation, as it interprets the regulation, the tax court correctly interprets the regulation to prohibit the subtraction of post-donation improvements. So if we find otherwise, we would have to disregard the circuit's decision. Your Honor, both T.O.T. and P.P.B.M. address our argument about the validity of the regulation, and that is the primary challenge here. We understand that T.O.T. forecloses are how to interpret the regulation, but the existence of both of those cases goes to the procedural issue here. There was substantial confusion in the regulated community precisely because there was an APA failure here, because Treasury did not engage in the back and forth that is expected of it and of all agencies when they go back and forth. And can I ask you a question about Oak Brook? Oak Brook, my understanding is, which is ironic given the first case, is that that's on motion for re-hearing on BOG? No, Your Honor. It has been argued on direct appeal two or three weeks ago and has not been decided yet. Oh, it has not been decided. Okay. All right. Thank you. It's pending in the Sixth Circuit, and we had oral argument two or three weeks ago in that case as well, and poses some of the same issues, although the deed is a little bit different in that case. There's another issue in that case that's not present in this one with the deed language. This case squarely poses the improvements issue, and for the reasons that we stated, we believe that it's clear Treasury didn't have the proper back and forth. It's easy in some cases to step back from the APA language where there are, you know, in some of these incredibly technical scientific cases where there are only four or five industry participants to whom the regulation would apply, and perhaps in those cases it's a little bit more difficult to understand confusion or to accept the back and forth. But here we have people who, the entire public to whom this law is intended to apply and is potentially regulated, and we have, you know, ordinary citizens, you know, the Hewitts that farm and conduct ranching on this property who are left to try to understand what happened here with none of the guidance that Treasury was supposed to provide, and that's the fundamental APA flaw here. And with that, I think I'll reserve the remainder of my time for rebuttal, please. All right. Thank you, Mr. Foster. Ms. Ugolini, you may proceed. Thank you, and may it please the Court. I'm Francesca Ugolini for the Commission on Internal Revenue. On the APA issue, I think my colleague on the other side has correctly identified the issue as whether the comments regarding the extinguishment regulation were of such a level of significance that they warranted an agency back and forth, and the tax court in its presidential Oak Brook opinion took a holistic look at the entire administrative record and correctly held that the Treasury Department considered all of the major policy issues that were under consideration in that regulatory project, engaged in that back and forth, but this issue of the extinguishment regulation, and more specifically donor improvements, did not rise to the level that required specific responses to the comments. All the Commissioner said was that they considered all comments. I mean, is that enough that we follow our decision in Lloyd Nolan Hospital versus Heckler, where we said that the agency should rebut all vital relevant comments, and here there were 90 comments, 13 addressed to the regulation, and the only thing that the Commissioner says is they considered all comments. If we follow Lloyd versus Heckler, that doesn't seem like that's sufficient. What's your response to that? I have a few responses. First of all, the Commissioner did respond directly to one of the comments about the clarity of the original proposed formula by clarifying the regulation as proposed by several of the commenters. So it didn't comment on that change, but it actually made the change, which demonstrates that it did consider... It didn't comment on the New York Conservatory comment, which was specifically asked to this issue, correct? That's correct, but I have a couple of points on that. First of all, that was a single comment out of all the comments, and if you look at this court's case in Husion versus Madigan, I think that provides the best touchstone for determining whether a comment rises to the level that the farm home administration regulation that changed the way evictions were reviewed. And in the process of changing the rules, the agency adopted a state court procedure for evictions rather than a sort of informal administrative review process. And several of the commenters pushed back that the state review process did not adequately protect due that... Holding that because the enabling statute regarding this farm home administration sort of eviction scheme did not... It did not accord greater weight... The agency did not need to accord greater weight to aspects of a policy question than the agency's enabling statute itself assigns to those considerations. So this court looked at the enabling statute, and what were the major policy considerations under that statute, and did the comments go to those major policy considerations? Now, in this case, section 170H does not reflect this sort of micro-level fairness for donors is not reflected as a major policy concern under 170H. 170H was enacted against a backdrop where donors previously were not permitted to take use. Donors had manipulated those rules to regain control over the property. Congress changed the rules in 1980 with this legislation, but enacted special provisions reflected in the statute and in the Senate report to make... The primary issue was ensuring that donations of conservation easements serve a significant public benefit. For that reason, the statute in two places requires that property interest and the conservation purpose be protected in perpetuity, and it requires the conservation... It says that the conservation... The donation has to be exclusively for conservation purposes. So in enacting this statute, Congress was not concerned with how can we make this... How can we protect donors to the maximum extent possible? Rather, it was looking at how do we benefit justifying this tax expenditure that is protected in perpetuity? So comments during the administrative process that went to... I guess, let's see. I'll go through the list. Treasury did respond to the formula being unclear by making the legislative... By making the change in the regulation. The alternatives that were mentioned by commenters, commenters who said, Treasury should just delete this rule. There are other alternatives. None of those alternatives went to ensuring that the property would be protected in perpetuity, which is what this regulation was about. In terms of comments that this rule will discourage donations, those commenters took issue with the statutory requirement that the property be protected in perpetuity. Those comments... In fact, the New York Landmark Conservancy said donors really don't like giving away their property interests in perpetuity, and they're usually mollified by the fact that in the future, if there's an extinguishment, they're going to get the property back. Well, that's just a comment that's taking issue with Congress's determination in the statute that the conservation purpose has to be protected in perpetuity. So because the comment about donor improvements did not implicate a major policy concern reflected in 170H itself, the Treasury Department was not required to respond to it. And the taxpayer's position in this case really would elevate... Their position essentially is that every non-frivolous comment that raised some kind of valid point about the regulations required a response. But that can't be the standard. An agency can't be held to that standard. The APA doesn't require it. The APA requires a concise general statement of the basis and purpose of the regulation. And in this case, the extinguishment regulation contains its plane on its face as the what the purpose of the regulation is. The comments that it received did not implicate the perpetuity requirement, and so Treasury was not required to respond to that. Unless this court has any further questions about the APA issue, I will turn to the Chevron issue in this case. The tax court in Oak Brook further held that the rule in this case reasonably interprets the protected in perpetuity requirement in the statute. It does so by setting forth a simple rule that splits sales proceeds in a direct proportional manner on the basis of a fraction determined as of the date the gift was made. This is a reasonable rule because easement valuation is extremely hard. This was recognized in the comments and has been recognized by all of the stakeholders in conservation easement. There are many unpredictable factors that could affect an easement's value over time, and the donees are 501c3 land trust organizations that may not have the resources to fight for top dollar in an extinguishment proceeding. The regulation eliminates this difficult exercise by setting forth a formula that is fair and easy to administer. Chevron does not require the IRS to come up with a perfect rule that addresses every hypothetical situation and yields mathematically precise results, only a reasonable rule. I'd also like to respond to my colleague's statement during his argument that the regulation here has created substantial confusion for the community involved in held that the regulation is clear. The fifth circuit explicitly held that the regulation is unambiguous at this point on this issue regarding donor improvements, and this court in TOT property holdings said that the taxpayer in that case, whose deed included one of these carve-out phrases, could not plausibly claim that their deed complied with the regulation because the regulation plainly does not allow amounts to be subtracted out. This regulation has been on the books since 1986. Congress has amended the statute multiple times, over 30 times since that time, and has never seen fit to make any change to the extinguishment regulation. That further reflects that it's a reasonable rule that was properly promulgated under the APA. You concede, do you not, that in the TOT properties, this court did not address whether or not the regulation was proper under the APA, correct? That's correct. The taxpayer did not make that argument, and this court noted that in a footnote. However, in that case, this court did consider and implicitly reject many of the same sort of policy and fairness arguments that are being made in this case. In that case, the taxpayer also argued that the regulation was confusing, the deed had been drafted by the land trust, many similar deeds might be held as non-compliant with the regulation if the court were to rule in the government's favor, and this court implicitly rejected those arguments in deciding that the regulation means what it says. I'd also like to respond to my colleague's argument that the IRS just sort of determined that the APA doesn't apply here. In the taxpayer's briefs, they depicted the IRS as being sort of cavalier towards the APA and dismissive in its application, but if you look at the preamble, the treasury decision that accompanied this regulatory project, the IRS had a good faith but perhaps misguided determination that these regulations were interpretive. It views its role as interpreting the Internal Revenue Code, and for that reason, because it concluded they were interpretive regulations, the IRS thought the APA did not apply. Nonetheless, it complied with the APA. It issued the notice of proposed rulemaking. It had a notice and comment period. It held a public hearing. There were 30 speakers, and not a single speaker addressed the extinguishment regulation or the donor improvement issue. So the IRS followed the APA even though it had made an incorrect legal determination that the APA did not apply. Unless this court has rest on its brief. Thank you, Ms. Udalini. Thank you. And Mr. Foster, you have reserved some time for rebuttal. Thank you, Your Honor. One of the policy considerations implicit in Section 170 is the congressional decision to encourage conservation. That has to be at least one of the policy considerations at issue, and the comment here from the New York Landmarks Conservancy said, your rule frustrates one of those major policy considerations. What else was the New York Landmarks Conservancy supposed to do? It gave a specific mathematical example, and as to the statement that the Treasury regulation is just implementing the perpetuity requirement in the statute, if that were correct, there would be no state law exception. And if you at the last clause of the proceeds regulation, it allows for circumstances in which the entirety of the proceeds, 100%, go back to the donor. The phrase at the end of the regulation is, unless state law provides that the donor is entitled to the full proceeds from the conversion without regard to the terms of the prior perpetual conservation restriction. If it were the case that this language did nothing but interpret the statute, that would have to mean that the statute would allow for circumstances where the land trust gets none of the proceeds. So that can't be the only consideration that was under consideration by the Treasury, but we don't know that. We're left guessing here, and we're trying to figure out because Treasury gave us nothing to work with. We had specific comments, and they weren't responded to, and my colleague in her Treasury's good faith, if misguided belief about whether or not the APA applies. Let's be clear, the APA definitely applies, but the same thing could be said of a taxpayer here. The court's NPPBM and TOT holdings did hold this regulation was clear under our judicial precedence, but we have a factual finding by the tax court here that there was a good faith effort to try to comply with the land conservancy tried to comply here, and they would have been able to do so, and we wouldn't have ended up in this good faith but misguided situation had the Treasury done what was required of it under its under the APA and engage with the regulated public, and when it got a comment, this wasn't a tiny comment. This was a comment that gave a specific mathematical example of why this was a problem. The New York Landmarks Conservancy did exactly what a person who's commenting in this process is supposed to do, and what they got back in Judge Holmes's words was the chirping of crickets. As a procedural matter, this regulation should be invalidated under the Administrative Procedure Act. Thank you, Your Honors, for your time. All right. Thank you, Mr. Foster, and Mrs. Eleni. Thank you.